THE PEOPLE OF PUERTO RICO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, BAYAMÓN PART, RAFAEL L. YDRACH YORDÁN, JUDGE, Respondent; MANUEL SIFREDO GONZÁLEZ, Intervener.

Nos. 2577, 2578 and 2579. Submitted March 31, 1960.—Decided June 28, 1960.

---

*Hiram R. Cancio, Secretary of Justice, J. B. Fernández Badillo, Attorney General,* and *Héctor Orlandi Gómez, Assistant Attorney General,* for petitioner. *Celestino Iriarte* and *Félix Ochoteco, Jr.* for intervener.

MR. JUSTICE SALDAÑA delivered the opinion of the Court.

In the Superior Court, Bayamón Part, the Prosecuting Attorney filed three informations against Manuel Sifredo González for violation of § 6 of the *Bolita* Act—Act No. 220 of May 15, 1948, (Sess. Laws, p. 738) 33 L.P.R.A. § 1252. Each one charged the commission of an offense which the prosecuting attorney labelled misdemeanors. In effect, it was alleged that on three different occasions the defendant "... in a printing shop owned by him, printed notebooks devoted to the illegal game of *bolipool* . . ." and that said material ". . . could be used and was connected and related to the illegal game of *bolipool*." At the commencement of the trial on May 15, 1959, the defendant moved for the dismissal of the prosecution. He invoked the interpretation repeatedly given

by the Bayamón Part to § 448 of the Code of Criminal Procedure, to wit: that the 60-day period provided therein to file the information *"where a person has been held to answer for a public offense,"* begins to run from the time a public officer authorized to practice arrests has seen the defendant commit the offense with which he is charged. After the question was argued by both parties, the trial court maintained its opinion of the concept of "held to answer" and rendered judgment ordering the dismissal of the three informations.

The Secretary of Justice did not immediately file a petition for certiorari in this Court against that judgment. We had previously issued 62 orders to review by certiorari other identical cases from the same Part of the Superior Court. And the petition which tested the theory of "held to answer" adopted by the trial judge had been finally submitted to this Court four days before, that is, on May 11, 1959. Our decision on this last case, as is well-known, was rendered on July 8 of the same year. *People v. Super. Court; Figueroa, Int.,* 81 P.R.R. 445. Therein we decided that a person is not "held to answer for a public offense" merely because he commits the offense in the presence of a public officer authorized to practice arrests. Therefore, irrespective of the circumstances which we shall consider hereinafter, the judgment rendered in the case of Manuel Sifredo González originates in an interpretation of § 448 which we rejected as "contrary to the letter, history, and logic of the provision and to the unwavering opinion of this Court expressed in more than thirty judgments during more than half a century." *Ibid,* at 448. It should be recalled that when we rendered our decision in the test case of María Figueroa, 53 days had elapsed since May 15, 1959, on which date the judgment of dismissal challenged herein was rendered.

This takes us to the most important point: to correct or amend that error, instead of resorting to this Court by way of certiorari, on August 6, 1959 the prosecution requested the trial court to reconsider its judgment of dismissal and to order

the reinstatement of the cases against Manuel Sifredo González. It likewise requested to set a day for trial within the briefest term possible. Five days later, on August 11, 1959, without holding a hearing to hear the defendant, the Bayamón Part fully consented to the petition filed by the prosecuting attorney. Upon being resummoned for trial on August 24, 1959, the defendant requested that the order or pronouncement for resuming the cases be set aside. Oral arguments were then presented on the questions raised. Later the defense and the prosecuting attorney submitted their briefs. Finally, on September 28, 1959, the trial judge set aside the former reinstatement of the cases and ordered definitively their dismissal. In its dispositive part the last order of the lower court states the following: *"Our orders of dismissal entered on May 15, 1959 being final, unappealable and unreviewable by certiorari, as we have seen, the reinstatement of these cases requested by the prosecution is denied and the dismissals originally decreed are maintained in full effect."* (Italics ours.) Said order was notified to the district attorney on September 29, 1959.

We must indicate that identical pronouncement was made in 174 other criminal cases pending in said Part of the Superior Court. In all of them the prosecution had followed the same proceeding as in the case at bar seeking to set aside dismissals decreed before July 8, 1959. And the trial judge, after reopening them and ordering that a hearing be set, again dismissed them on the same grounds which he set forth in the *González* case. Under such circumstances which are really extraordinary, the Secretary of Justice 37 days later (on November 5, 1959) filed a petition for certiorari directed to review the judgment of dismissal which was entered in the case at bar on May 15, 1959. We issued the writ and the petition was finally submitted to this Court on March 31, 1960.

The controversy at bar is squarely confined to determining whether, notwithstanding the lapse of five months and twenty days from the initial dismissal of the case until the

date when the petition for certiorari was presented, the judgment rendered may still be reviewed and the dismissal decreed set aside. In other words, the only question raised is of a procedural nature: Should the petition be denied on the ground that it was requested belatedly? The intervener alleges briefly (1) that a petition for certiorari in criminal cases should be filed within the term in which an appeal would lie, either by the defendant or by the People, or at the latest within 30 days from the date of entry of the pronouncement challenged; (2) that the trial court lacked jurisdiction to reconsider its judgment, with the state shouldering the responsibility of having resorted to that erroneous proceeding which delayed the filing of the petition for certiorari and (3) that the delay in filing the petition for certiorari was in any case undue and unjustified, whereby the writ issued should be quashed. The Secretary of Justice assumes a diametrically opposed view. First: that there does not exist a fixed and constant period of limitation to file the petition for certiorari in criminal cases, but rather a reasonable term whose duration depends on the merits and circumstances of each specific case. Second: that no error was committed in asking the trial court to reconsider the judgment, since the latter was authorized to reconsider it within a reasonable term starting to run from its date of entry. Third: that taking into consideration the merits and special circumstances of the case at bar there was no undue or unjustified delay to render untimely the petition for certiorari filed on November 5, 1959. It is a point beyond discussion, and not overcome by the intervener, that at the bottom, the dismissal of the prosecution against González decreed on May 15, 1959, is not justified and constitutes an error, pursuant to the doctrine on the concept of "held to answer for a public offense," which we established on July 8, 1959 upon deciding the case of *People* v. *Super. Court; Figueroa, Int., supra.*

 If we examine our laws clearly we shall see that a procedural term for the filing of a classical certiorari has

never been contemplated therein. The Act of March 10, 1904 which introduced in Puerto Rico this method of review did not set a term within which to request the writ. See Act of 1904 (Sess. Laws, p. 132). When the Code of Civil Procedure of 1933 was drafted, inserting in §§ 670, 671 and 672 the provisions of the original Certiorari Act, the lawmaker did not fix a time limit to file that proceeding of review before the courts. See 32 L.P.R.A. §§ 3491–3493. Although they sanction the discretionary power of the Supreme Court to bring to its consideration by way of certiorari any judgment or order of the Superior Court, neither the Organic Act of the Judiciary of 1950 (Sess. Laws, p. 1126) nor the Judiciary Act of 1952 which is in force (4 L.P.R.A. § 1 *et seq.*), changed that situation in the least. Our own Rules of Civil Procedure of 1958 do not provide any term either. They limit themselves to excepting and leaving in effect §§ 670 to 672 of the Code of Civil Procedure of 1933. See 32 L.P.R.A., 1959 Cum. Supp., Rules 1–72. It should also be observed that in the special certioraris the Legislature has always fixed the period to file the petition. All of which means, in our judgment, that the omission as to the classical certiorari cannot be attributed to mere inactivity or inertia on the part of the lawmaker.

Actually, in view of the actual state of the law, it is impossible to apply here "by way of analogy," as the intervener suggests, the terms of 5 and 15 days provided by § 349 of the Penal Code to take appeals from orders and judgments rendered in criminal cases, when the right to appeal is granted to the defendant or district attorney. 34 L.P.R.A. § 1076. Neither can we apply the 30-day term fixed by Rule 53 of the Rules of Civil Procedure of 1958 for the appeal or review of a judgment rendered in civil cases. 32 L.P.R.A., App. R. 53. We cannot invent a concrete and fatal procedural term which is not provided by law and incorporate it by judicial *fiat* in the certiorari proceeding. *Cf.* 40 A.L.R.2d 1381–89.

This explains further the equitable doctrine of laches established conclusively by our case law: if the delay in requesting certiorari is undue and unjustified, the writ should be denied because equity only aids the diligent person and not him who abandons or neglects his rights. See among others, *Hernández* v. *Hutchison*, 20 P.R.R. 484 (1914); *Berríos* v. *Municipal Assembly of Yabucoa*, 30 P.R.R. 382 (1922); *W. J. Cox Co. Inc.* v. *Municipal Court*, 40 P.R.R. 621 (1930); *People* v. *District Court*, 44 P.R.R. 681 (1933); *People* v. *Municipal Court*, 46 P.R.R. 610 (1934); and *Corrada* v. *Municipal Assembly*, 79 P.R.R. 345 (1956). Of course, the lapse of a specific period of time is not sufficient to constitute what is technically called laches. Necessarily, petitioner's negligent conduct, in failing to further diligently and promptly the issuance of the writ, must have caused an unnecessary and unreasonable delay which actually harms the other interested persons. It should be noted that the theory of laches involves two elements: (1) the unjustified delay in the filing of the petition and (2) the harm that it might cause other persons, according to the circumstances. We must also consider the effect that the granting or denial of the writ would have on the present private and social interests. When the delay does not work any harm to another or the harm caused is slight, if compared with the damage that the petitioner or the public would suffer if the writ were not issued, the lapse of time must be great in order to constitute equitable laches. However, although the delay be relatively short, if it would result in detriment to the public interest or the individual rights of the defendant, the writ should be denied on the basis of the doctrine of laches. Especially, it is necessary to take into account the merits and other circumstances of the specific case, since the doctrine of laches is still bound to the fundamental idea of equity; "reason" and "conscience" are invoked to find just solutions, departing from the intransigent rigorism of the fatal terms. *Cf. Rodríguez* v. *Municipal Court and Ramos*, 74 P.R.R. 616

(1953) ; *Mercado* v. *District Court*, 71 P.R.R. 739 (1950) and *Miranda* v. *Heirs of Alicea*, 52 P.R.R. 247 (1937).[1]

■■ Let us clarify, before continuing, that the order or judgment of dismissal challenged in this proceeding is not reviewable by appeal. In effect, the dismissals decreed pursuant to subdivisions 1 and 2 of § 448 of the Code of Criminal Procedure are not comprised in any of the six cases expressly enumerated in § 348 of that same Code. (34 L.P.R.A. § 1074.) Needless to say, since there is no specific authorization in said § 348, an appeal by The People does not lie. *Cf. People* v. *Nieves*, 63 P.R.R. 512 (1944) and *People* v. *District Court and Colón, Int.*, 74 P.R.R. 783 (1953). It is true that said § 348 says in subdivision 4 that an appeal may be taken by The People *"de una providencia declarando el sobreseimiento provisional."* But the English version dispels any possible confusion. It reads as follows: "An appeal may be taken by the People: . . . 4. *From an order arresting judgment.*" (Italics ours.) Accordingly, it is from an order declaring the "arrest of judgment" under §§ 305 to 308 of the Code of Criminal Procedure that an appeal may be taken by the People pursuant to said paragraph 4. See *People* v. *Rivera*, 46 P.R.R. 109 (1934).

As a result the general rule that we established in *People* v. *District Court*, 60 P.R.R. 217 (1942) referring to an order or judgment appealable by the prosecuting attorney is not applicable here. In that case we stated that save for certain exceptional cases: "The writ of certiorari, being an extraordinary remedy, should not generally be issued where there is available an adequate, speedy, and effective remedy in the

---

[1] To the same effect, see Toledo Alamo, *El Certiorari Clásico en Puerto Rico*, 16 Rev. Jurídica de la U.P.R. 315, 383–86; 2 Pomeroy, Equity Jurisprudence (5th ed.), 169–81; Chafee, Simpson and Maloney, Cases on Equity (3d ed.), 1106–14; McClintock, Handbook of the Principles of Equity (2nd ed.), 71–73; Hanbury, Modern Equity (6th ed.), 57–61; Ferris, The Law of Extraordinary Legal Remedies (1926) 201–03; 14 C.J.S., *Certiorari*, §§ 63 and 66; and 10 Calif. Jur. (2nd), *Certiorari*, §§ 34, 35 and 56.

ordinary course of law." And for that reason we added that in that case "as the order involved herein is appealable . . . and as an appeal would constitute as speedy and effective a remedy for the purpose of the case herein as a certiorari proceeding, we would be justified in discharging the writ issued on that ground alone." It is clearly seen that the situation in the case at bar is different, since the order or judgment decreeing the dismissal was unappealable. *Cf. People* v. *Superior Court*, *ante*, pp. 740, 744, 750 (1960). For the same reason it cannot be contended that we are confronting a case where the prosecuting attorney has lost the right to appeal from a judgment or order entered in a criminal case for failure to file the proceeding within the time determined by law. *Cf. Sánchez* v. *District Court*, per curiam decision, 60 *D.P.R.* 957 (1942). Ordinarily, when the remedy of appeal exists and the jurisdictional term has been allowed to expire, but later certiorari is sought, the mere lapse of time suffices to show that the petitioner is guilty of laches. See *Sánchez* v. *District Court*, *supra;* and *Puente* v. *District Court*, 61 P.R.R. 652 (1943). Even so, that general rule has its exceptions.[2] But all that is not pertinent here.

This having been established, we must decide now whether or not the petitioner is precluded here from obtaining the remedy sought by him because of his own laches, that is, if the writ issued should be discharged on the basis of the doctrine of laches whose juridical contents we have already analyzed. To that effect it is indispensable to consider all the factors which actually intervened in the procedure followed to file his petition. The rule of laches

---

[2] For example, upon rendering our decision in *Rodríguez* v. *Municipal Court and Ramos*, 74 P.R.R. 616 (1953), notwithstanding the fact that the term to appeal had expired, we stated (a) that there were extraordinary or special circumstances therein and (b) that the latter warranted the issuance of certiorari to attain the basic ends of justice. *Cf.* also *Vergne* v. *Superior Court; Cervecería Real, Inc., Int.*, 77 P.R.R. 20 (1954); *Vázquez* v. *Heirs of Alicea*, 52 P.R.R. 247 (1937); Toledo Alamo, *op. cit.* at 335–38, 348–51, 359 and cases cited therein.

leaves a wide margin to weigh the circumstances of the specific case and to determine its consequences, applying the juridical tests previously mentioned, on which an objective decision depends. Although our discretionary power is extensive, yet it cannot be mistaken by an arbitrary order. On the contrary. The application of the equitable doctrine of laches requires (1) a complete evaluation of the interests in conflict, and (2) an analysis of the peculiarities of the concrete case. It is to these points that we turn our attention.

The judgment of dismissal rendered on May 15, 1959 in the present case did not constitute an isolated and irrelevant incident in the administration of criminal justice in Puerto Rico. Prior to that date, during a period of almost eight consecutive months, the trial court was decreeing the dismissal of a great number of prosecutions on the basis of its peculiar interpretation of the phrase "held to answer for a public offense" which appears in § 448 of the Code of Criminal Procedure. It is well-known that the first of that long series of orders dismissing criminal cases was rendered on September 25, 1958 against María Figueroa in a violation of the Beverage Act. On October 31, 1958 we issued a writ of certiorari in the *Figueroa* case in order to determine the certainty of said order. However, the lower court continued applying unflinchingly its theory of "held to answer" to all the criminal cases in its calendar. Meanwhile the petition for certiorari in the *Figueroa* case continued its procedure in this Court. On May 11, 1959, after the briefs were filed and the hearing was held, it was finally submitted to our consideration. And still, the trial court continued dismissing criminal cases on the basis that "held to answer" referred to the situation where a person commits an offense in the presence of a public officer authorized to practice arrests. Proof of that is that in the case at bar the judgment of dismissal on that ground was entered precisely on May 15, 1959, four days after the petition in the *Figueroa* case was

submitted to us. This abnormal situation continued until July 8, 1959, date when we entered our decision in the *María Figueroa* case. *People* v. *Super. Court; Figueroa, Int.,* 81 P.R.R. 445.

It should be noted that up to that time nine months and thirteen days had elapsed since the first dismissal decreed by the trial court. During that period, as was to be expected, in a host of cases for violation of the *Bolita* Act (33 L.P.R.A. §§ 1241 *et seq.*) and the Beverage Act (13 L.P.R.A. §§ 1741 *et seq.*) the defendants obtained orders of dismissal. In practice, the theory that a person is "held to answer" from the time that a public officer sees him commit the offense with which he is charged, was applicable more frequently to these two types of offenses which, as shown by statistics, constitute the bulk of criminal litigation in the Superior courtrooms of Puerto Rico. To verify it, it suffices to indicate that in the judicial year 1958–59, 1652 cases for offenses against the *Bolita* Act and 1655 cases for violations of the Beverage Act were filed in the Superior Court. This represents a total of 3,307 cases which make up 37 per cent of all the criminal cases filed in the Superior Court during that judicial year. See the Seventh Annual Report of the Director of Courts, 1958–59, Table No. 3. It is not surprising, therefore, that in the Bayamón Part of the Superior Court, 237 *bolita* and beverage cases were dismissed from September 25, 1958 to July 8, 1959, all of them on the sole ground of the erroneous interpretation of the phrase "held to answer for a public offense."

What did the prosecution do in view of that avalanche of dismissals? Our own records reveal that it filed 62 petitions for certiorari up to July 10, 1959. Of course, once the writ of certiorari was issued in the *María Figueroa* case, the different petitions could be filed in more or less stereotyped terms. But our Regulations require always that the petition " . . . *contain an exact copy of the decision and of the opinion, if any, delivered therein, and all the pleadings of*

*both parties which the court or agency had before it in reaching its decision."* (4 L.P.R.A., App. I, R. 15 c). In addition thereto, "petitioner shall file in this Court *as many carbon copies of his petition as there are party defendants as well as an additional legible copy for each member of this Court."* (*Ibid.*, R. 15 d). The preparation of hundreds of papers and their certification by the clerk of the Superior Court, undoubtedly had to render difficult the filing of the petitions for certiorari at the same time that the trial court ordered more and more dismissals. So much so, that upon rendering our decision setting aside the dismissal in the *María Figueroa* case—on July 8, 1959—there still remained at least 175 cases dismissed, where the proper petition for certiorari had not yet been filed in this Court.

Upon this background, we must now particularize the events in the specific case of Manuel Sifredo González. It was on May 15, 1959, we repeat, that the dismissal was ordered. Everything indicates that the prosecution promptly began to take the necessary steps to file a petition for certiorari. It ordered a transcript of the information, the motion to dismiss filed by the defendant, and the judgment rendered by the trial court. However, due to the unusual situation created by the bulk of criminal cases dismissed, it could not obtain the proper certificates of the clerk of the Superior Court until July 2, 1959. Six days later, on July 8, we decided the test case of *María Figueroa.* Since in addition to the *González* case there were 174 more cases in the process of being reviewed by certiorari, the Secretary of Justice rightfully states that " . . . the People believed that justice would be better served if it requested the reinstatement of the cases which were in the process of being reviewed by certiorari, rather than resorting to this Court to raise a question which it had already decided in specific terms . . . [for which reason] on August 6, 1959 the reinstatement of the case of the intervener herein was requested as well as of many more which were in identical status."

Naturally, that decision to request reinstatement of the cases dismissed could not be reached without first examining and considering with prudence several factors, including, of course, the question of whether or not the Superior Court is authorized to reconsider a judgment of dismissal rendered in a criminal case. We do not deem it unreasonable to take this as an explanation for the 29 days that elapsed between July 8 and August 6, 1959.

We already stated that on August 11, 1959 the trial court agreed to the reinstatement requested by the prosecution. But upon being resummoned for trial on August 25, González requested that the order for continuing with the cases be set aside. Oral arguments were then presented on the questions raised. Thereafter the defense and the prosecuting attorney submitted their briefs. Finally, on September 28, 1959, the Superior Court denied the reinstatement and upheld "in full effect the dismissals originally decreed. . . ." This last order was notified to the prosecuting attorney on September 29, 1959. Since all the other cases where the prosecution had managed to obtain orders of reinstatement had met the same fate, the People again had to face suddenly the cumulus of suits and take all the necessary steps to file 175 petitions for certiorari in this Court. It is not surprising then, that 37 more days elapsed from that time up to the filing of said petitions in the office of our Secretary. In the cases of Manuel Sifredo González the petition for certiorari was filed on November 5, 1959, exactly five months and twenty days after the initial dismissal was decreed on May 15 of that same year.

Upon consideration of *all* the facts, we believe it is undeniable that there were two principal grounds or reasons for the length of time taken by the Commonwealth to file the petition for certiorari in this case: (1) the extraordinary accumulation of cases which were dismissed by a single Part of the Superior Court in a brief period of time; and (2) the decision made by the prosecution when we rendered our

judgment in the *Figueroa* case, to request the reinstatement of the 175 cases dismissed instead of resorting immediately to this Court by way of certiorari. We clearly cannot make the state liable for the first cause of delay. The latter did, in our judgment, everything within its power to act promptly under those unusual circumstances. As to the other reason for delay, again we cannot charge liability to the state if it is determined that in the case at bar the Superior Court was authorized to reconsider the dismissal and reinstate the cases, and that it erroneously refused to reopen them.

At this point we must refer to the order entered by the trial court on September 28, 1959. It will be remembered that there, ultimately, the reconsideration and reinstatement of the cases against González was denied. Let us examine now the grounds stated. The trial judge decreed in its pertinent part that:

"This decision of ours (referring to the dismissal decreed on May 15, 1959) was not reviewed nor its review sought in any way, either under the classical remedy of appeal or by certiorari. That is, our pronouncement became *final* (*firme*) because the 5 as well as the 15 days to appeal from orders and judgments in criminal matters expired (34 L.P.R.A. § 1076). However, on August 6, 1959—83 days after we issued our order of dismissal and 75 days after it became final and unappealable—the reinstatement of the cases was requested, on the ground that the Hon. Supreme Court of Puerto Rico had reversed an order of this court of a similar nature in the case of *People* v. *Superior Court*, # 2457.

"We agreed to the petition of the prosecuting attorney and the reinstatement was ordered on August 11, 1959. Today, however, and after considering the objections of the defendant we are forced to deny the reinstatement requested. Reasons? That surely we do not consider ourselves authorized to reinstate cases dismissed by orders which have become *final* (*firmes*). The Prosecution is the one called upon to accuse once more if—at the time of attempting to do so—it has that power by law."

In our judgment that order was clearly erroneous. In the first place, it is based on a premise devoid of all validity, to wit: that the order or judgment directing the dismissal was appealable by the prosecuting attorney. We already indicated that § 348 of our Code of Criminal Procedure does not authorize nor admit such appeal. In the second place, it is a well-settled rule in our jurisprudence that the trial courts are authorized to reconsider and correct any judgment rendered in a criminal proceeding before the accused has begun to serve the sentence. The standards within which said power may and should be exercised were clearly stated in *Santiago* v. *Warden*, 74 P.R.R. 578 (1953). Therein we stated that: "The power of a trial judge to reconsider a sentence within a criminal prosecution is limited by certain rules which must be clarified before reaching a definite conclusion. The first rule is that the offender must be still under the custody of the trial court, without having undergone any part of the original sentence; the second rule is that reconsideration does not lie unless there is a mistake in the name, in the punishment imposed, or in the application of the law to the proved facts in the prosecution, which might justify the reconsideration of the original sentence; and third that certain circumstances justifying the mitigation or aggravation of the sentence must be present." (p. 581.) It should be noted that this states and elaborates the doctrine that we had previously established in *People* v. *Carbone*, 59 P.R.R. 608 (1941), in holding that: ". . . trial courts are empowered to reconsider their judgments, prior to their execution, either on motion of a party or *motu proprio*, and to conform the same to the statute, either in order to correct any mistake incurred when imposing them or in order to conform them to any state of facts duly proved by either side." (p. 617.) With these principles in mind we do not see how the trial judge could have stated that "surely we do not consider ourselves authorized to reinstate cases dismissed by final and unappealable orders."

But there is more. In *People* v. *Ruiz*, 61 P.R.R. 431 (1943) we decided a question almost identical to the one at bar. As stated therein, it was as follows: "Does a municipal court have the power to annul an order of dismissal of a complaint pending before it and to order that a complaint be reinstated and the case be tried?" (p. 433.) We decided in the affirmative. A deep and thorough analysis of the point raised led us to conclude that although the dismissal of a complaint or information "has the legal effect of ending the proceeding under such complaint or information; neither one nor the other may be reinstated in order to continue the proceedings in accordance with them," said rule is wholly inapplicable where the order of dismissal is still under the control of the court that entered it and it is held that it should be set aside by reason of fraud or of the commission of an error of fact or of law. For such reason we decided that the Act authorized the trial court to set aside its own order of dismissal, entered more than nine months previously, and to thus reinstate the case already dismissed.

Of course in the *Ruiz* case the order to dismiss was annulled by reason of fraud. But obviously the juridical principle involved was not restricted to that situation of facts. On the contrary, by way of dictum we recognized that the trial court can and should set aside a dismissal decreed by reason of an error of fact. And subsequently that doctrine was enhanced still further upon indicating explicitly that the *"mistake in the application of the law"* was one of the reasons justifying the reconsideration of a judgment entered in a criminal proceeding. See *Santiago* v. *Warden, supra,* 578. *Cf. Arroyo* v. *People,* 41 P.R.R. 727, 729–30 (1931).

Needless to say that since in the cases of Manuel Sifredo González we are dealing with a judgment of dismissal under § 448 of the Code of Criminal Procedure, there could be no constitutional prohibition barring the reconsideration by reason of double jeopardy. Thus, the trial court had absolute

control of said judgment of dismissal with clear and unquestionable authority to reconsider it and order reinstatement of the cases. It cannot be held, as the intervener contends, that "the judgment ordering dismissal of the cases was one of immediate execution, that is, that when their reconsideration was sought, they had already been executed." Actually there is no way to *"execute"* a judgment of dismissal. Neither is it possible for the defendant to begin to *"serve"* it. Furthermore, it should be noted that the reconsideration was requested within a reasonable period, after all the peculiarities of the present case were heard. And on the other hand, a "serious mistake" of law had been committed when judgment was rendered dismissing the cases against González. This constituted sufficient reason at law to set aside the dismissal and order said cases reinstated.

From all the foregoing we can see with unassailable clarity that no error was committed in requesting the reinstatement of the cases against González instead of resorting to us by way of certiorari. The prosecution could have done the latter, but the other road was also open in terms of good juridical theory. And it also offered two practical advantages: (1) it was the speediest and most effective way to obtain a prompt hearing and (2) it would have avoided congestion in the calendar of this Court. Consequently, the Commonwealth is not liable for the delay unfortunately worked by the motion for reconsideration. Far from that, the delay was due to the contentions made by the intervener himself in the trial court and which, upon prevailing, motivated the erroneous order of September 28 denying the reinstatement of the cases and maintaining "in full effect the dismissals originally decreed."

However, the intervener states that to permit the review by certiorari in such circumstances would impair or destroy substantial rights which belong to him as defendant. *Cf. People* v. *District Court and Colón, Int.*, 74 P.R.R. 783, 791–92 (1953). And he also points out that in *People* v.

*Municipal Court*, 46 P.R.R. 610 (1934) we applied the doctrine of laches to quash the writ of certiorari issued because "when the application for certiorari was filed, more than 120 days had elapsed without a trial . . . and we have no explanation of the delay."

It is known by all that the right to a speedy trial is not impaired (1) if there is "good cause" for not submitting the defendant to trial within the term of 120 days, or (2) if the defendant expressly or impliedly waives that right. A slight analysis of the situation before us in the case at bar, shows that there is "good cause" for not applying the statutory term of 120 days. Further: the delay is due to the defendant's own acts which operates as an implied waiver of the right to a trial within the term of 120 days. It should be remembered that on two occasions the cases against González were called to trial: on May 15, 1958 and on August 24, 1959. On the first occasion the defendant requested and obtained an order to dismiss under § 448(1) of the Code of Criminal Procedure. After the cases were reinstated, upon being resummoned for trial, the defendant managed to obtain that the lower court set aside said reinstatement and order definitively the dismissal of the cases under said § 448(1). Since the right to request review by certiorari accrues to the state, it is obvious that the events constitute "good cause" to interrupt the statutory term of 120 days and to commence a fresh limitation period when the records are remanded to the trial court, in the event that the order or judgment challenged is set aside. Otherwise it would be an idle and futile gesture to grant that right to the state. On the other hand, it should be noticed that it was the defendant himself who, being familiar with that right of the state, requested and obtained a dismissal which on two occasions barred the holding of the trial. Could he now benefit from a delay that was caused principally by his own acts? Evidently not. In such situation the defendant impliedly waives to be tried within the

120 statutory days. *Cf. People* v. *Ruiz*, 61 P.R.R. 431, 434 (1943) ; *People* v. *Carrero*, 45 P.R.R. 79 (1933) ; *The Right to a Speedy Criminal Trial*, 57 Colum. L. Rev. 846, 855–56 (1957) and cases cited therein.[3]

 This does not mean that the rules of public policy underlying the constitutional and statutory guarantee of a speedy trial can or should be disregarded here. Upon applying the doctrine of laches to determine when a petition for certiorari is untimely, it is necessary to bear in mind that every delay in furthering the appeal harms the social and individual interest that is protected by the so-called "right to speedy trial." As we indicated recently, that social and individual interest is three-fold: "to avoid long imprisonment while the trial is pending; to eliminate personal anxiety, public suspicion and the economic and moral harm produced by a criminal accusation kept unsettled for a long period of time; to initiate the trial while the evidence is disposable, in other words, to avoid, due to the delay, the loss of witnesses and the dulling of their memory." *People* v. *Super. Court; Figueroa, Int.*, 81 P.R.R. 445, 460 (1959). But as is always the case in the entire organization of the criminal prosecution there are other social interests which demand juridical protection: order and general security require that the penal laws be enforced and that there be effective methods to try those who, in disregard of their provisions, have attacked public peace. How can we reconcile, satisfy and protect effectively those conflicting interests? With a just and humane sense, we must require accuracy and punctuality from the prosecuting attorney in the filing

---

[3] The same thing happens, undoubtedly, when the state requests by certiorari the review of an order of the Superior Court granting (a) a demurrer to the information filed by the defendant, (*Cf. People* v. *Super. Court; Somohano, Int.* 79 P.R.R. 719), or (b) a motion to suppress and eliminate evidence obtained by virtue of a warrant whose legality is challenged, (*Cf. People* v. *Super. Court; Colón, Int.*, 79 P.R.R. 581), or (c) a motion for delivery to the defendant of copy of the statements made in the preliminary investigation, (*Cf. People* v. *Superior Court; Ramos, Int.*, 80 P.R.R. 679).

of a certiorari proceeding. Any unreasonable or undue delay, no matter how short, suffices to constitute equitable laches. On the other hand, the prosecuting attorney can never be denied the necessary protection to comply "with his mission of enforcing the criminal laws," if the concrete circumstances prove that he has been diligent and has never abandoned or neglected the proceedings to file the certiorari.

As we have already stated, in the case at bar liability cannot be charged to the state on the grounds or reasons of the delay which occurred. Such delay was due *first of all* to the unusual accumulation of cases dismissed by only one Part of the Superior Court in a brief period of time; and *second,* to the procedure of reinstatement of the cases, which should have been granted but was erroneously decided against the People. To all this the defendant himself contributed effectively by raising the questions he did in the trial court: In other words: the prosecution here fully explained the delay. This is, precisely, what separates and distinguishes the case at bar from the one we considered in *People* v. *Municipal Court,* 46 P.R.R. 610 (1934).[4]

---

[4] To verify this, it suffices to mention the facts in the *Municipal Court* case and reread what we stated upon considering them. In the latter case the former municipal court sustained a demurrer set up by the defendant to the complaint filed. The People took an appeal but the latter was dismissed for lack of jurisdiction because the order was not appealable. Consequently, four months and five days later, The People applied for and obtained a writ of certiorari issued by the former District Court. Upon reversing the judgment of the District Court, which had set aside the order of the municipal court, we said among other things: "What principally impresses us is the delay in applying for a writ of certiorari, supposing it to lie. *The Government appealed on a false theory, but the appellant, Gallardo, had no responsibility for this mistaken theory. The fact was that after a demurrer sustained in the municipal court the appellant had a right to prompt action. It is clear that when the application for a certiorari was filed, more than 120 days had elapsed without a trial. Counting, as we might, that a part of the delay was indirectly due to the demurrer filed in the municipal court, yet, a defendant is entitled to a speedy trial and we have no explanation of the delay between the sustaining of the demurrer and the application for a writ of certiorari.*" (P. 613.) (Italics ours.)

896

 Actually we do not see how it can be urged that, if we refuse to quash the writ issued in this case, the fundamental rights of the defendant would be impaired or destroyed. On the contrary, since the petition for certiorari was filed timely according to the limits fixed by the doctrine of laches, we are fully convinced that it would be a serious mistake to set aside the writ and leave in effect the three judgments of dismissal. These constitute, we repeat, a "serious mistake" and are "contrary to the letter, the history, and the logic of the provision and to the unwavering opinion of this Court expressed in more than thirty judgments during more than half a century." And the defendant, intervener herein, so admits without reservation or ambiguity. If we fail to set aside said judgments in the concrete and special circumstances presented by the case at bar, we would be proclaiming the inefficiency of penal justice and granting impunity to an alleged delinquent.

The judgments appealed from are set aside and the cases remanded for further proceedings compatible with this opinion.